2013-1452-88, LLC. 2014-1147-1426, we will hear from Mr. Lucan when you are ready. I don't have my water. I don't have to. We want you to have your water. I've got a much more brief without my water. May it please the court, John Lucan of Dinchmor-Chull, Cincinnati for the Appellant and Cross Appellee, Ohio Willowood. As the court can tell from the briefs, there are a number of issues in this case, and I'm going to try to reserve five minutes of my time so that I can address the issues on which I am the cross appellee, so I'm going to start with standing and try to work through the issues on which I'm the appellant. The standing issue, Your Honor, I think is open and shut. This court's jurisdiction is very clear that an exclusive licensee that doesn't have substantial, all substantial rights, does not have standing to sue in its own name, has to have the patent owner there. At the outset of this case, this is clearly a field abuse license. The patent is this broad, covers all kinds of applications, and this is a field abuse, the original license is a field abuse license solely for prosthetic devices. So you're saying the amended license doesn't count? It does not count. No, Your Honor. Patent law is already so much more accommodating in terms of curing prudential standing than anything else that's out there. In a normal case, one cannot cure prudential standing by doing something later, but in the Enzo case, where Judge Ritz specifically addressed this issue and said, you cannot non-proton amend. You must join the patent owner. I believe Your Honor was concurring on that panel. The court specifically recognized this. In a normal case in prudential standing, you can't go back and correct after the fact, you pretty much have to dismiss and start over again if you lack prudential standing. Because of the unusual situation in patent law that even though the statute doesn't say an exclusive licensee with all substantial rights has standing, this will extend the statute so that they can sue in their own name. So they're already cutting off a lot of slack. And in the patent situation, if they bring the suit without all substantial rights, if they don't have standing in their own name, you can add the patent owner throughout the district court proceeding so as to keep the case going with the original parties and have it relate back. To change that rule now and say, and reverse ENZO and say that no harm, no foul, you can modify the contract while the case is pending and have it relate back to the original without doing the number of ways. Of course, it's a pretty serious matter to throw out a case at this stage of the game. We've had a jury trial, we've had a lot of issues. It certainly is, Your Honor, but it was in ENZO as well. In ENZO, the case had gone all the way through to the merits and they had every opportunity as here to do something about it. That's why I say that no harm, no foul is not a good rule of jurisprudence. There were ample ways under this court's jurisprudence they could have changed the contract before they sued. They could have dismissed and refiled immediately. They could have added it to district court. They've still never added it to appellate court, although I would suggest, Your Honor, that this court has never allowed adding of the patent owner at this level except where it was sandbagged, that it never came up at this level, or the parties never raised it as a mentor when the court raised it sui sponte. In ENZO, there was the same problem. Plus, Your Honor, I don't know how clear any of this is from the record, but there is another lawsuit under a continuation patent against my client, which is a narrower patent for the exact same products during the exact same time period, so we're going to be litigating whether the same products get us in trouble or not, and they've got another suit against three individuals associated with my company for infringing the 109 patents before this court. Were those suits filed either after the second license agreement, or did they join the patentee in them? One of them was, and one of them wasn't, and the one that was filed after they were still before the district court, and they can cure it by involuntary joinder if they want to. So you agree that had they simply dismissed and refiled after the second licensing agreement, they would have been okay? There could be statute of limitations issues, but yes, that is how they can do it. Well, there would have been statutory damage limitations, not statute of limitations. Yes, Your Honor. I'm sorry. That's exactly right. And is that your best guess as to why they didn't do exactly that when they filed the supplemental complaint, is because they didn't want to lose the ability to go back six years from the date of the first complaint? I don't think that it would have mattered, Your Honor. They just weren't playing by the rules that this court has set down. I think now they may have some issues with that, which is why they sued my individuals to try to preserve that. But as long as, and this is rebuttal, intervening rights kicks in, that won't even matter because they're only going back to 2011 when the re-exam certificate issued. So there is a home for this case with the same disputes if this court dismisses. Are the other cases filed in the same court? They're in the same district court. One is before the judge down the hall, one's before the same judge. And I suspect they would be consolidated. The other side says ENZO is distinguishable because it's a case about constitutional harm. And here we're really talking about prudential. It clearly is not. Constitutional standing is whether you even, I mean, there's the three-part test, but it's basically whether you even have an interest that you could be there with the patent owner. And if you don't, you don't even belong in the courtroom at all. And it's clear in the ENZO opinion that Judge Rich is talking about prudential standing. First of all, he lays out, he doesn't say prudential standing, but he lays out the test. Do you have all substantial rights? And all substantial rights is a prudential standing question. That's basically Waterman versus McKenzie. I think so. And probably came along in the case law later. I'm not sure exactly, the Supreme Court cases start to blur together with all the issues we've got here, Your Honor. But I think that the test of prudential standing as it has evolved in this court is definitely what Judge Rich was working for. And Judge Rich's suggestion in that same opinion, that they could have cured the standing defect in ENZO by adding the patent owner. You cannot cure a constitutional standing defect by adding the patent owner because you don't even belong in the courtroom. So it's pretty clear from those two things that ENZO was a prudential standing case and thus it's on point. If you have an amended complaint and in that amended complaint, you add a new claim, like suppose that your first complaint against them, suppose you're the patent owner and your first complaint against them contained two different patents you're suing them for infringement on. And then they add an amended complaint midway through or partially way through litigation with consent of the district court. And the amended complaint adds a third entirely new patent to the litigation. Why doesn't the date of the amended complaint be the day, is the day the law suit starts at that point in time, the amended complaint? Your Honor, I think if, and this has- You see the parallel. Here we have a supplemental complaint that was entered after the licensing problems were cured, the standing problem was cured. So why doesn't that suffice? Your Honor, the test for standing is the rights and the rules that permit amendments and joinder, specifically rule 15 in the amendment process, allows you to amend, to state additional facts as they existed, but not to state new facts. For standing purposes, the test is standing as a file. So I think it's a different setting. For those claims. So your argument would be, maybe your distinction would be, in my example, it's a whole different claim that's being asserted in the amended complaint because you can only consider the jurisdictional facts for that. The patent didn't even exist at the time.  You follow me. I think that's right, Your Honor. For jurisdictional purposes, if it's the same claim, you have to look at the facts, the jurisdictional facts that existed. They can change their allegations to show you the jurisdictional facts existed, but they can't change the facts themselves. I believe that's right, Your Honor. Okay. But yeah, Newman-Greens, I think. Yeah, I think so. If I could, I'd like to move to infalidity and the infalidity 102 and 103 issues are closely related. And you think there's a need to? I mean, you're arguing standing, right? If we decide this case the way you want- If you decide this case on standing, we are going to have to go back and do it again. And this court does not reach anything else that's going to go on. But I think I owe it to my client, if I can, to argue the other ones because I- You haven't ruled in my favor yet. On invalidity, there are two references that are at issue here, Hammond and Debeau. And there is no dispute that Debeau has everything that's in the 109 claims that are at issue here, except it doesn't have Seep's gel, it has a polyurethane gel. And Hammond has the Seep's gel. And this court's cases say that when one Hammond, on page six of Hammond, he expressly incorporates Debeau by reference. And it's clear that you can do that and they're treated as one reference for- Don't they both lack the physically interlocked limitation? No, they don't, Your Honor. They don't. Debeau does show physically interlocked. If you look at Debeau's figure four and Debeau's figure five, which we show in- Well, they're in Debeau, but they're also in both of our briefs. They both show Debeau's substrate, which he calls something else, but it's the substrate for Chen 109 purposes. One of them's a foam and the other's a fabric. And you can see the gel is pushed into the interstitial spaces in the foam in figure four of Debeau. I think this is on page 10 of our reply brief, and I think it's around 35 of the brief, of the main brief. And in Debeau, he also gives a fabric, and you can see the fabric threads, and you can see the gel completely encapsulates it. The little dots are all through. Debeau does that. He's got a thermoset gel, so he knifes the gel or he knifes the precursor liquid over the substrate, and then he applies heat and he cures the substrate, so he has a gel that's formed by heat. And his composite of that gel and the substrate is physically interlocked. Hammond comes along and says, polyurethane's fine, but CEATS is a lot better, which is the essence of Mr. Chen's claim. And he goes out of his way to incorporate by reference. Debeau, by reference, the only serious question that could be raised is whether Hammond is clear enough in telling you how to put the two together. I just want to make sure you know how our time works. You're using up your rebuttal time that you had intended to save. I think so, and I think I addressed this to me in the brief, so I will. I'll hold the rest for the rebuttal time. Thank you, Mr. Luke and Mr. Christelde. And you've got a cross-peel, so you'll want to save a little time for that. Yes, Your Honor. Or you may. We reserve one minute for rebuttal, and we'll be prepared to address these points and the cross-peel points now, Your Honors, if that pleases the Court. Thank you, Your Honor. As Your Honor knows, my name is Ron Christelde with the law firm of Shoemaker, Luke, and Kendrick. I represent the plaintiff, Cross Appellant, Alps South. We appreciate the opportunity to be here today. Your Honor, I'd like to provide- Why isn't there lack of standing? Your Honor, there's a- First of all, you get ENZO. Yes, sir. Secondly, when I look at this amended license, if it could remedy the defect, I see the grant of rights, 211, assignment of ownership of certain patents. I'm including this one. I look at 213, there's a license of certain rights. The agreement itself distinguishes between ownership, assignment on one hand, and a license on the other hand. You yourself, your client, distinguished between ownership and license, and this is license. Sure, Your Honor. You've asked two questions, one about ENZO and one about the distinction in the agreement. I'm happy to address both. ENZO is clearly distinguishable because of the facts in ENZO. The plaintiff did not have constitutional standing the date that the complaint was filed in that case. In our case, we did have constitutional standing. That's not questioned. Under Lujan, we met the three elements and we had constitutional standing. This issue's been addressed four times below in one of the other cases. Judge Kovacovic, the district judge, affirmed standing. In this case, two different district judges, Judge Covington and Judge Scriv in both affirmed standing. Did any of them wrestle with ENZO? Yes, sir. They all did. ENZO was an issue that's been raised by Ohio Willowood in all of these cases. In the ENZO case, factually, the plaintiff did not have constitutional standing. That's undisputed because there was nothing in place the date that ENZO filed. But ENZO doesn't talk about Lujan or it doesn't talk about injury to the plaintiff. It talks more in terms of all substantial rights. Your Honor, you're absolutely correct. It does not get into a discussion of the distinction. And it also points out that it accepts the idea that there was an oral license there, right? You asked two questions, Your Honor. The first is it doesn't talk at all about prudential standing either. It just talks about standing in general. But isn't it clear that KPAG did have constitutional standing? They were – well, are we talking about KPAG or ENZO? We're talking about, I believe, ENZO, Your Honor. And in the ENZO case, there was – our position, and we believe it's clear in the case, there was no constitutional standing. There was no agreement. Your second question related to was there some kind of oral agreement. And generally, the case law with respect to patents, as Your Honor well knows, that an assignment needs to be in writing.  There was nothing in writing at the time. The suit was filed. And what they did in the ENZO case, which is different than the facts of this case, very different from the facts of this case, what they did in the ENZO case is they tried to come in and create something where there was absolutely nothing in the beginning. The case law is clear in the International – I'm sorry, Intellectual Property Development v. TCI Cablevision decision of this Court, which is 248 Fed 1333, which is a much more recent case that ENZO discusses the distinctions between prudential and constitutional standing. But even if you're right on that, when you look at the amended agreement, isn't it clear that there's a distinction between ownership assignment and license? And this patent falls under the license provision. Absolutely, Your Honor. There is a distinction between exclusive licensee and an assignee. That's recognized in the case law. But I'm not sure, Your Honor, respectfully, that that distinction makes a difference in this case because an exclusive licensee with all substantial rights can, in fact, have prudential standing and constitutional standing. And our position here is that the amended license agreement, even if we didn't have standing, both prudential and constitutional, at the initiation of the lawsuit, which we contend that we did, the prudential standing piece was cured when the amended license was entered into because all substantial rights of an exclusive licensee, there's no question about that an exclusive licensee with all substantial rights has the ability to have prudential standing. We have all substantial rights. And there is a distinction in the law between an assignee and an exclusive licensee. But exclusive licensees as well as assignees both have a prudential standing. Even if I was willing to accept your argument that ENZO applies only to constitutional standing, despite the language, it seems to me, doesn't indicate that. But even if I were willing to, because Judge Rich certainly wrote much broader than simply a focus on constitutional standing issues. But even if I were to accept that argument, well, then you're in a scenario where maybe we're not bound by ENZO, but we have to decide whether the same logic that was used to decide the case in ENZO ought to apply to this case. And I'm having a difficult time determining how Judge Rich's decision ought not to apply to a circumstance involving prudential standing, especially in light of all of the Supreme Court cases that came, Newman Green and all the regional circuit cases, Press Room Unions, Fields from the Third Circuit, all of which I think are prudential standing cases, and say you can't correct defects in actual jurisdiction of facts after the time of the original complaint. And every one of them was a circumstance just like this, which involved you just got to go back and do a do-over. Even though nothing would really be different, you just have to do a do-over, because this is an important rule that we're not going to allow to be modified. I appreciate the points, Your Honor. Two points. ENZO is factually different, because again, in ENZO, we believe that there was no constitutional standing. You believe that, but Judge Rich didn't say that. That wasn't what he based it on. He didn't make that constitutional standing analysis, and nor did he limit his discussion to the kinds of facts that would pertain to constitutional standing as opposed to prudential standing. His analysis includes all of those facts. He wasn't burdened by labels like constitutional and prudential. He just looked at all the facts and said this doesn't work. And under all of those facts, we believe that the reason it didn't work is because constitutional standing didn't exist. You believe that, but that's not what he said. So apart from that, even if you were correct, why wouldn't that identical rule, why shouldn't that identical rule apply to a case that you say is based exclusively here on prudential standing? I don't see any logic that would result in two different rules for us. Under the intellectual property development case, Your Honor, there is a distinction, again, a Federal Circuit opinion. The distinction being that constitutional standing cannot be cured. Prudential standing can be cured. And prudential standing, for instance, could be cured by joinder. The case law is very clear that you can cure prudential standing. You don't have to dismiss and start the suit over. No, and that's an exception on the part of patent law. It doesn't exist pretty much in any other field of law. You can cure this defect in prudential standing by joining the actual right holder. And so why didn't you do that? You could have done that at any point, and then we wouldn't have to deal with this mess. Why didn't you do it? Because we had three different district court judges respectfully who told us that wasn't necessary. We're happy to join Mr. Chen. Mr. Chen has given us all rights in this. Mr. Chen, the inventor, I'm sorry. I'm sorry. That is not acceptable. You say three different judges told us it wasn't necessary. What was the cost to you of joining him? There was no cost, right? You could have avoided this entire thing. Clearly they thought it was necessary. Clearly there was a dispute whether the district court judge sided with you or not. Clearly that resulted in this litigation, that choice to you. And it was a no-cost choice. It was a choice of Mr. Chen. Mr. Chen is an independent party, an independent individual, Your Honor, and there would be a cost to Mr. Chen. He's an individual inventor. He's not associated. He has a company, but he's the only employee of the company. It was a cost to Mr. Chen of participating in the litigation. Mr. Chen's preference was not to participate if he didn't need to. We believe that he doesn't need to. Again, this issue came before three different district judges on the same facts, the same parties, and we were told each time we were prepared to bring him into the suit if it was absolutely necessary, and we were told that it wasn't absolutely necessary. We're prepared to join him now if necessary. Rule 19 permits involuntary joinder. There's a case, the Mentor case before this court, where this court permitted, even on appeal, the joinder of a patent inventor and owner. Circumstances are a little different here than the one in Mentor, right? Yes, sir. Where the Mentor court said this is a rare circumstance. We're going to condone this or permit this. Yes, Your Honor. The facts under Mentor, your point is well taken, are different than the facts here, but the point is that the prudential standing issue can be cured at any point in litigation. In only one way. In only one way. And you want us to expand the umbrella of ways that prudential standing can be cured. I mean, that just takes us away from what regional circuits do every day with regard to prudential standing. We've already done something a little different and unique with regard to patent law. I mean, you want to move us even further away from the norm. With respect, Your Honor, I don't think we're asking for what Your Honor is suggesting. I think what we're asking for is there is no prudential standing issue today because the patent agreement was amended, the license agreement was amended. There is no regional circuit case that you pointed to in your briefs, and nor could I find any, that would support the notion that the prudential standing defect of the type you have here, not owning the property right, can be cured and an amended complaint can then be filed to cure the defect. In fact, every single case, like I said to you, the Supreme Court's Newman Green, the Second Circuit's Pressroom Unions, the field of the Third Circuit, says that can't happen. Exactly that scenario. They're not patent cases. None of them. I just don't see why we ought to treat a patent case differently. And your argument is, well, put, we already treat patent cases differently because we allow you to join and thereby cure. But what you're asking us to do is expand that already disparate treatment that exists for patent cases, and that I'm finding troubling. There are two other rationales, Your Honor, for standing in this issue. First, the courts have held that a licensee who has the ability to sue for past damages on that basis alone has prudential standing. In our original license agreement, we have... So it's field of use, and that is unequivocally on all fours, with Pope out of the Supreme Court and International Game Co. written by Judge Rader back my first year on the bench. It's on all fours. It's an identical case. That case was a field of use, and that's what you have. You have rights to bring suit, but only in field of use. In both of those cases, the Supreme Court's Pope decision, like 1897 or 1887, and our International Game Co. was identically those facts. And, Your Honor, with respect to the standing issue, again, we believe that for the reasons that we've amended this, we would be willing to join Mr. Chan. Coming to the same ground again and again, before you come to the minute you want to say for cross-appeal, anything you want to say on other issues? If I can, if I could move to the absolute intervening rights issue, Your Honor, with respect to the absolute intervening rights issue. Which is one of your cross-appeal issues. Yes, sir. The patent came out of re-examination with essentially two amendments that the district court found to be issues that caused the patent, in plain language, to be different, substantially different, to cut off damages from that point on. The two issues were the addition of the words, quote, comprising polystyrene, ethylene, ethylene, propylene, styrene, close quote, which I'll call CEEPS, S-E-E-P-S, for the sake of ease here in oral argument. And additionally, the adding of the language, quote, physically interlocked. The claims 5, 6, and 12, which were independent, I'm sorry, were dependent claims, already were limited to CEEPS. We announced this motion for reconsideration. We brought that to the attention of the district court, and the district court acknowledged that it may have made an error in that respect. So you're saying physically interlocking is really no change? And then the second point is physically interlocking. It's really no change. But doesn't that invalidate your patents? Because that was... It's no change, Your Honor, because it's inherent. So what these patents claim are a composite that's heat reversible, heat formable. I guess the question is what is really the contribution the inventor here made to the art in light of Hammond, which incorporates, by reference, Debeau? Sure. Which together, given that we have to treat that as a single reference, because one incorporated the other by reference, what we have in that combined reference is the CEEPS polymer gel combined with the substrate. Respectfully, I don't believe that Hammond and Debeau show that. They don't show a composite, which is important. Composite is a key word in these, and a composite formed by heat is physically interlocked. Physical interlocking is the process by which... But Mr. Lucan says they're necessarily interlocked because they're together. Together doesn't mean interlocked, we would submit, Your Honor. There were claims of construction in this case as to what composite and to what physically interlocked meant, and in the claims of construction, which are waived for purposes of appeal because they have not been raised on appeal, Judge Scriven defined physically interlocked to be an inherent process whereby the polymer is liquefied, if you will, put in the context of a substrate, cooled down, and physically interlocks with it. Hammond and Debeau don't show that. Hammond claims a polymer that can be used as an encapsulant forced around electrical components. Debeau uses thermoset, not thermoplastic polymers that are essentially squeezed into a box to perform certain encapsulant-type functions. The incorporation by reference, if Hammond has read carefully, is a description of an encapsulant. Hammond says, specifically, this can be used as an encapsulant as discussed in... As you see, you've consumed your time, but we'll give you a minute back on the cross-appeal, on the intervening rights issue, if there's something to respond to. Thank you, sir. Ms. Tolucan. Thank you, Your Honor. Briefly on standing, there was a suggestion that three different district court judges told them they didn't have to add anybody. Judge Scriven... One of the cases is the same judge, and the other case was the one you said where it was filed after the day of the amending. Yes, I think our case went through two judges, and the first judge ruled contrary. But when Judge Scriven picked this up, Sue Esponte, she thought, contrary to Enzo, that she was dealing with an issue that this court had never addressed. And she said, I'm going to go ahead and let this thing be known for its own retroactive. But she pointed out, I can't find any case that's ever let a judge like me do this again. And she, in that order, strongly urged them to add the patent owner. So it's not as though they weren't told by the district court that they should follow the rules that this court has been discussing. A couple of other issues on the cross-appeal, Your Honor. With respect to the intervening rights, that is a claim construction issue. There's a question of what the claims meant before re-exam and what they meant after re-exam. And with respect to physically interlocked, I don't think they can even raise the arguments they're raising here, because the language that they relied on in their opening brief was that formed-with-heat language. And as we point out in our opening, in our response to that, to their opening brief, they originally proposed that formed-with-heat, as in making the composite formed-with-heat, involved physically interlocking. And my predecessor argued that, no, it didn't. It simply requires heat. And at argument on Markman before the magistrate, they withdrew their proposal that formed-by-heat requires physically interlocking. So to come in here today, as they did in their opening brief, and urge that Judge Scriven committed error because she construed the pre-re-exam formed-with-heat language to mean exactly what they stipulated to is entirely inappropriate. Their reply brief, that we did not get a chance at in the brief, shifts grounds completely and it points to the word composite. And it pulls out the tronics and says that Mr. Chen was his own lexicographer. And when he said composite, he meant physically interlock composite. And in fact, that one was not even litigated on Markman. It was a stipulated, agreed order that said a composite is what you think it is. It's a composite. It's a combination. It's the plain meaning. Nothing there about physically interlocking either. So for them to overcome this intervening right, they have to convince you that Judge Scriven erred by picking claim constructions on the pertinent terms composite and formed-by-heat for what the composite does that are the exact opposite of what they urged themselves below. Last, and I know we haven't talked about willfulness yet and we kind of moved right past, but the recent decisions in HALO and STRIKER both confirmed that Seagate's two-part test is still in place and valid. I heard that there is an en banc petition filed in HALO. If the court is going to rethink its Seagate willfulness jurisprudence in light of the Supreme Court's decisions in the attorney's fees, we respectfully submit that unless and until en banc this court overrules Seagate, that the court should follow what it did in STRIKER and what it did in HALO, which would mandate, if the court doesn't dismiss on standing, would mandate reversal on willfulness. Thank you, Your Honor. Thank you, Mr. Lucan. Mr. Cristaldi on the cross-appeal only. One minute. Your Honor, Mr. Lucan mentioned Judge Scriven's claim construction and mentioned that it was before the re-examination. The claim construction on the phrase physically interlocking was done as part of the summary judgment process and was posted to the re-examination proceeding. It was specifically because the phrase physically interlocking was now part of the claim, and Judge Scriven did rule in that definition that physical interlocking was an inherent process of cooling down the polymer, I'm sorry, heating up the polymer, putting it in contact with the substrate and cooling it down. The case also is clear, Your Honors, that when a feature is inherent in the patent, it doesn't change the substance of the patent. Your Honor, I know it's outside the scope, but there was a statement made that we were strongly urged by the court to add. That's untrue, Your Honors, and the three judges, Judge Moore that I referenced earlier, were two judges in this very case, but the judges have changed. That's standing, that's not a cross-appeal issue. I apologize, Your Honor. Thank you all. Thank you. The case will be taken under submission.